Docket 20-1432. I guess let's just start by making sure we have the two lawyers at the ready. So, Mr. LaPlaca for the appellant, are you here? I am here, Your Honor. Good morning. And Mr. Olinsky for the appellee?  Good morning. So, Mr. LaPlaca, we'll start with you. Each party has ten minutes allocated to them. And Mr. LaPlaca, I understand you have set aside two minutes for your rebuttal, is that right? That is correct. Very good. So, Mr. LaPlaca, take it away. Good morning, Your Honors. It is good to be here, at least under these circumstances, and I hope you're all well. May it please the Court, this appeal pertains to the granting of a motion to dismiss of a two-count complaint by a landlord against the guarantor of a commercial lease. The first cause of action is the issue is whether a settlement with the tenant released the guarantor from its obligations under the guarantee of the lease. There was an initial breach by tenant, and then tenant and landlord were in a lawsuit, and it was then pursuant to a settlement agreement, settled with arbitrations and some modifications of the specific provisions that we're suing under regarding the initial construction obligations of the tenant, which were breached prior to the settlement. So, what we have here is the well-established law that on a motion to dismiss, the district court may only dismiss a breach of contract claim if the contract terms are unambiguous. We've pointed to at least six provisions in the guarantee, which at least raise the issue of an ambiguity as to whether the defendant guarantor can remain liable under its guarantee, notwithstanding the fact that the landlord and the tenant settled their claims. The defendant appellant argues, based upon this court's decision in compagnie financiere, and I'm very glad that my first argument before the Second Circuit, I get to try to pronounce that case, that even if the guarantee is ambiguous, it must be construed in favor of the guarantor, and that somehow that entitles them, despite all these ambiguities, to dismiss the case. But this rule of construction is inapplicable in the first place on a motion to dismiss. That case was decided not on a motion to dismiss, but after factual findings on a declaratory judgment. And the court highlighted the fact that this strict jurist construing the guarantee in favor of the guarantor did not come into play until after the typical and ordinary principles of contract construction apply. I'm sorry, Ms. LaPlaca, could I just hit the pause button right there and let me inquire as to whether the judges have any questions. So, Judge Kearse, why don't we just start with you. All right. I do have a question. I have a question about jurisdiction. The plaintiff in this case is a limited partnership, and I don't see anything in the complaint in this diversity case that specifies the citizenship of the individual partners. Is there anything in the record to disclose what their citizenship is? There is nothing in the complaint that states the individual partners of the limited partnership residence. In that sense, Your Honor, I don't know if there's anything in the record that has any list of all the limited partners and their residence. In that sense, there's never been a dispute that no one is a resident of Switzerland as the defendant is. But we don't know from the record whether there's actually diversity. We don't know that there's actual diversity, and there's been no claim of lack of subject matter jurisdiction by the plaintiff or by the defendant in this case. But there isn't a pleading or a statement of all of the limited partners. That's correct, Your Honor. Thank you. I mean, I could put that in the record that I know firsthand. There's only a handful of limited partners in this limited partnership. It's a very family-owned small company. Thank you. Okay. Judge Lynch, do you have any questions? Yes. Mr. LaPlaca, you started by saying the question is whether the guarantor was released by the settlement agreement. It was not my understanding, I thought, that the guarantor claims to have been released only whether the lease was modified to change the obligations of the parties. And therefore, the guarantor is still on the hook, but only if there is a breach of the lease as modified in the settlement agreement. Am I misunderstanding what the issues are here? No, I don't think you're misunderstanding, Your Honor. I think it's different terminology that can be used because there was an original breach back in before the settlement agreement, before any lawsuit, there was a breach by the tenant. These obligations were then modified by the settlement agreement, and the tenant was released from those obligations. And the issue is whether the guarantor can still remain liable for that original breach of those obligations. So, it's whether he was released or whether he waived the fact under the agreement, under the guarantee that he waived any settlement release, etc., as he did, as it did, under the guarantee. Well, you say that they were in breach from the beginning, but at least according to the arbitrator, you were in breach still at the end. So, I'm wondering what impact that has in determining this claim. If you didn't comply with the landlord's obligations under the lease, does that not excuse the tenant's breach, if any? Well, Your Honor, I think that's where all of this confusion has come in, and it was the confusion from the district court. There is no holding at all by the arbitrator that has anything with regard to the issue of whether a tenant was in breach of its obligations under the settlement agreement. And there definitely was not any decision by the arbitrator about the tenant was originally in breach prior to any lawsuits for its obligations under this paragraph 78 regarding construction. Well, if the landlord didn't do the landlord work, how does the tenant get to perform? Well, the landlord actually did do the landlord work. There were two – this gets into a whole – this is what is the issue that's been going on here, that this goes down a big rabbit hole because of the use of the language in the settlement agreement. There's one term, landlord work, and there's one term, dunnage. Actually, the arbitrator concluded that landlord work was completed. Dunnage was not completed. The provision for the nine months payment of the 1.925 million, paragraph 9, states only that it's with regard to landlord work. It does not refer to the dunnage. A separate provision in the settlement agreement refers to the dunnage. But I think what we're highlighting here is all of these issues that are getting decided on a motion to dismiss, and they can be explained and flushed out. And the district court just – for the second cause of action, meaning alternatively that if the settlement even applied to the guarantor, that those issues were not decided completely, fully for race judicata to apply by the arbitrator. But the first cause of action is what I was initially referring to with regard to the guarantee specifically says that it is irregardless of any settlement or release of the tenant, and that the only way that the guarantor can be released of its obligations is in a written, signed release by the landlord. But isn't that – that goes back to my initial question. I was thinking that perhaps, and I'm asking for your views on this, all of that language is in there to defeat the common law rule that if there is any change in the contract whatsoever, the guarantor is released, and so typically guarantee contracts today have language of the sort that you reference that says that's not so. The guarantee doesn't disappear just because there's been some change. That doesn't – the guarantor is still on the hook only if there is a breach by the person being guaranteed, right? Well, the way I see it, Your Honor, is we have a breach at a moment in time in March of 2017 when the alterations weren't commenced on time pursuant to the lease, and when the nine months had expired to complete the obligations and make the certain payments. There was a breach at that certain point in time, and the guarantee says you don't have to sue the tenant. There's no – there's a waiver by the guarantor of any commencement of such action, of any delay in commencement of such action, and there's a waiver of any subsequent settlement or release of the tenant. So we still have the right pursuant to the guarantee. All of those rights were waived. The settlement agreement does not include the guarantor. It does not include any waiver of the guarantor. There's nothing in there that says that the initial breach somehow also took the guarantor off of the hook. The settlement agreement – the guarantee actually says the opposite, that the settlement release, delay, any excusing of performance, everything that happened in the settlement agreement is irrelevant to any claims against the guarantor, and those are the provisions that were ignored that made this, at the very least, an ambiguous provision on a motion to dismiss to continue the case. Okay, thank you. I think I understand your position, and that's all of my questions for now. Thank you, Your Honor. Thank you, Mr. LaPlaca. I don't have any questions for you right now, and I know you've reserved two minutes for rebuttal, so let's turn to the appellee, Mr. Olinsky. You have ten minutes. Thank you, Your Honor. May it please the Court, I'm going to try to do in two minutes what I had in mind to do in a little bit more than that, and that is to go through the material provisions of the guarantee, A and C on one hand, B and D on the other, and show that they do fit together. They're not ambiguous. They do require an underlying default by the tenant for the guarantor to be held liable, as was held by the trial court. Starting with, really, even before that, an underlying principle of New York law that's been observed by this court in the Terwilliger case, which is on page 22 of our brief, direct quote, a guarantee is a contract of secondary liability, and a direct quote, a guarantor will be required to make payment only when the primary obligor has first defaulted, and that's quoting the Weissman case in the Court of Appeals, brings me to paragraph A, which is an expression of that concept of secondary liability. The exact language, the exact language of paragraph A, which is what creates the duty on behalf of the guarantor, it says the guarantor becomes liable if the tenant shall default in payment or in performance. If tenant shall default in payment or in performance, that exact word is in there. It also provides lower down in that same paragraph that there can be additional damages such as attorney's fees, and here's the direct quote, which may arise as a consequence of tenant's default under the lease, close quote. Now, I could stop here because I think it's crystal clear under paragraph A that you're required to have an underlying default by the tenant. That's the whole concept of secondary liability, but I'll go on to paragraph C, and that is I think I'll also probably mangle the complainant's case name because I didn't take French, but as was alluded to during the questioning before, the concept of the under the common law, if there's any modification, there is a discharge of the guarantor. That opening language of paragraph C negates that. Then that brings us to the sentence near the end. Quote, the liability of the guarantor here under shall be based upon the obligations of the tenant set forth in the lease, as the same may be altered, renewed, extended, modified, amended, or assigned. What that tells us is that paragraph A still applies, that you still have to have an underlying default, that you measure the liability of the guarantor by the obligations of the tenant in whatever form they may have been altered. Now, let me try to finish my two minutes on paragraph B and D. Plaintiff says that that creates ambiguity. We think that's wrong. Terwilliger and the Case Manhattan case and many others say that you must construe the language strictly when you consider whether there's ambiguity, but there is none here. The concept here is a very basic one. You still have to have the tenant's underlying default, and if there's an underlying default, then the landlord can go directly against the guarantor. We don't dispute that, but you still have to have the underlying default. Paragraph B tells us — Mr. Luncey, we've hit the two-minute mark, and why don't we just turn to Judge Kearse and see if she has any questions, and we'll go down the line. No question here. Thank you. Your Honor, may I just jump in on that? Judge Kearse did ask about jurisdiction. That is something we've thought about because we noticed the same issue that apparently the court did. We realized that the individual members of the plaintiff were not alleged. We just got a representation by the plaintiff that there are no members who are aliens who are from Switzerland, and we think if there is any issue there, it could be cured by a simple submission of an affidavit. Sorry to interrupt, but I thought that was an important point. Wouldn't diversity be destroyed if they were citizens of any foreign country, not just Switzerland? Judge, you know, you're probably right. I hadn't thought that far in all honesty, but I believe that we've got a representation by the plaintiff that they are domestic, and that's our understanding as well based upon all the litigation that's gone on that's collateral to this case. So we do believe that it can be cured. I agree and picked up what you picked up as well, that it's not in the record, and I think it should be cured by the Kansas. Thank you. Okay. Judge Lynch? Yes, Mr. Oleski. I didn't think that the plaintiff here is disputing that the guarantor's liability is secondary. I thought what I heard him argue is that there was a breach by the tenant, which would render your client liable, and that they can prove that, and that the settlement does not resolve that issue or somehow make it settled law or something that they can't approve anymore that you did breach. Am I missing something there? No, I don't think you are. I think you're actually alleging both. I think they're kind of saying both. The point about the secondary liability to us, I'll start with that, is that, you know, you don't have – you can't have liability of the guarantor unless you have an underlying default by the tenant, and I do think that there is some question – they are kind of questioning that to some extent. But they certainly are arguing what you just said – excuse me, I'm just going to take a drink of water – that there is an underlying default, and that's been established that there's not, okay? Okay. Can you tell me where that's established just so I can find it? Yeah. Yes, that's what I was about to start to do. Okay. And the kind of way I argued it in the district court was to say you kind of can look at these two counts as being in two different time periods. There's sort of the settlement time period, the lawsuit time period, and the settlement, and then there's the arbitration period, and they basically have alternative theories for these two different time periods, if you will. In the underlying lawsuit, our client claimed – brought the lawsuit and claimed that they were released and that there was no obligation for them to perform because they had never gotten the approval by the landlord that would have allowed them to go forward with the initial alterations. There was a counterclaim that said that, no, you should have done them anyway, and therefore you're in breach and we want to evict you. What the settlement did is it resolved all of those claims, including the counterclaim, and I don't have the record page in front of me right here as I spread things out in my home office, but I do know that it's on page two of the settlement where it's clear that all the claims were given up. What happened in that settlement is that the landlord accepted the plans that were the linchpin for us to be able to perform and do the work that constituted the initial alterations. That's where the obligations were changed. You can't have an underlying default in the under count one because there was never a trigger for us to be able to perform, and that trigger was then changed by the settlement. The settlement in giving up those claims of eviction, in dropping the claim that we failed to perform, and in setting a new schedule established that we can't have been in breach. That's the answer on count one. On count two, and that's, I believe, on A250 of the record, age 23 at the second interim award, and this may have, frankly, gotten a little confused in going back and forth on the initial argument with Mr. LaPlaca, and I want to distinguish the two. They're really two different things. What happened in the second interim award is that Judge Klain said, and it's on page 23 of his second interim award, A250 of the record, that where a claim was made, this was in a collateral attack by the plaintiff, the landlord, against the schedule that Judge Klain had put in effect, and they said that they didn't do anything wrong and that we were in default with what they said, and the judge completely rejected that, and what he says on page A250 is that they blocked our ability to perform. They wouldn't pursue. They failed to pursue the regulatory approval that we needed to be able to do our work, so that's why we can't have been in default under count two either, so you've got to look at the language of the settlement and what was in dispute there to establish that there was no underlying default under count one. You've got to look at the second interim award to establish that there was no underlying default on count two, and when you put all that together, if I have satisfied your question, I'll then go back to where I was going to finish, if I may, which is I was talking about paragraphs B and D, which is what they say really the essence of what they say created ambiguity that they think requires some discovery here. One minute. What B tells us is that the obligations of the guarantor are independent. They can exceed that of the tenant, and you don't have to go first or even at all against the tenant. That's consistent with the concept of secondary liability. Paragraph D tells us that you can waive or release the tenant, but you still get to go against the guarantor. We don't dispute that either. You still have to have an underlying default, and as I've just established, I believe on count one and count two you don't have an underlying default, and that's why the decision of the district court should be upheld. Thank you very much. Thank you, counsel. Mr. LaPlaca, you have two minutes reserved for rebuttal, and let me just say out loud that if any of the members of the panel have any questions during the rebuttal time, please feel free to just jump in directly. Thank you, Rona. For the first point, counsel, the guarantor says that we can't have a default for the initial first cause of action for the breach prior to the settlement because the terms were changed by the settlement, and that's exactly what Provision B of the guarantee says doesn't apply. It says that the guarantee applies regardless of any compromised settlement, release, or termination of any of the obligations of the tenant under the lease. So when the tenant settles by itself with the landlord under any of its obligations, any prior breach doesn't affect the fact that we could sue the guarantor for that prior breach. If they wanted the guarantor out, they could have released the guarantor. They could have put it in the settlement agreement. They didn't do anything like that whatsoever. The tenant was resolved, was compromised and settled, but the guarantor was not. I also point out that the guarantee of G specifically says that the guarantor has no defenses to its obligations here under, and back to the Compagnie Franciere case, that was the exact issue in that case. When you have a waiver of defenses by a guarantor. One minute. Does that prevent them from being discharged from its obligations by virtue of the release of the principal debtor? And the court said it does not. And the language in that case of what that waiver was is much less broad. It talks about unconditional irrevocable guarantee, which we have here. There doesn't have to be an action, which we have here. It talks about waiving any recovery of any judgment against the borrower, or any circumstances which might otherwise constitute a legal or equitable discharge or defense of the guarantor. And that was to be upheld in that case decided by this court. And there still existed a claim against the guarantor, even though the underlying borrower was released. And we have many more provisions, waiving delays, waiving equitable or legal discharge, as I said, waiving compromise release or settlement, that they remain fully binding despite any defaults, extended time of performance by tenant, or release of its performance of its obligations. These are not something that are just trying to cover the common law rule. This is a four-page complicated guarantee agreement by sophisticated parties, understanding exactly what they were getting into when the guarantor signed and committed to all of these provisions. And it can't just simply say, well, you settled with the tenant, and now you can't make any claims against me. As to the second cause of action, I'll try to be brief. I have a minute. The second cause of action is, okay, settlement agreement applies. Are they still in default for failing to comply with the settlement agreement? And there is not a decision by the arbitrator that holds that the tenant was or was not in default. There is language in a number of decisions talking about landlord's delay, but those are issues of fact that would be decided in this case and were never conclusively and fully decided in the other case.  But whether or not that delay would excuse the tenant's performance or whether or not the tenant then got an extension of the nine months to complete construction was never decided at all in the underlying arbitration. So that's why that second cause of action needs to be decided in the district court where those issues can be fully flushed out and we have the full opportunity to do that, which never happened in the arbitration with the tenant. Thank you for your time, Your Honors. Thank you very much to both counsel. That was very helpful argument. We appreciate it. And the court will reserve decision.